**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2883
_____

JAMES WASHINGTON

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA,
Appellants
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-10-cv-02869)
District Judge:  Honorable Eduardo C. Robreno
_____

Remanded by the Supreme Court of the United States
on May 30, 2014
Argued on Remand February 9, 2015

Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Opinion Filed:  September 1, 2015)

Susan E. Affronti, Esq.
Thomas W. Dolgenos, Esq.  **ARGUED**
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
    *Counsel for Appellants*

Adrian N. Roe, Esq.  **ARGUED**
Duquesne University School of Law
632 Fisher Hall
600 Forbes Avenue
Pittsburgh, PA 15282
    *Counsel for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This case returns to this Court upon grant of certiorari by the United States Supreme Court, followed by vacatur and remand for further consideration in light of the Supreme Court's decision in *White v. Woodall*, 134 S. Ct. 1697 (2014). This appeal requires us to determine whether the Pennsylvania Superior Court unreasonably applied "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), when it permitted the admission into evidence of a confession by a non-testifying codefendant that redacted James Washington's name and replaced it with the generic terms describing Washington and his role in the charged crimes. The District Court found that

2

this was an unreasonable application of clearly established federal law. We will affirm the District Court's judgment.

I.

## A. Factual History

On February 24, 2000, James Washington, Willie Johnson, Romont Waddy, and James Taylor set out to rob a Dollar Express store at which Taylor worked. They met around midnight and drove to the store at around 4:15 AM. Washington drove the four men in a vehicle owned by one of his family members. Washington and Taylor remained in the vehicle while Waddy and Johnson entered the store. Upon encountering two store employees in the loading dock, Johnson shot and killed both. Johnson divided money removed from a safe and the men left the premises.

Shortly thereafter, Taylor surrendered to police, gave a statement, and agreed to testify against the other men in exchange for a reduced sentence. Taylor identified Washington as the driver. Waddy also gave a statement to the police on March 5, 2000, and identified Washington as the driver. He added that Washington, after hearing the shots, entered the store and helped remove cash from the safe.

Johnson, Waddy, and Washington were tried jointly before a jury in the Court of Common Pleas of Philadelphia County in October and November 2001. Taylor testified on October 25, 2011, identified all of the coconspirators, and discussed in detail their roles in the crime. He clearly and repeatedly identified Washington as the driver of the car. On cross-examination, Washington's counsel pointed out significant inconsistencies in Taylor's story, in addition to his history of substance abuse and admitted heavy impairment from drugs at the time of the incident in question. Four days later, on October 29, 2011, Detective John Cummings

3

testified. After the trial judge gave a limiting instruction, Cummings read a redacted version of Waddy's confession over Washington's objection. The jury never saw the original or redacted copy of the confession. Cummings's reading deleted Johnson and Washington's names or nicknames each time they were used; they were replaced with phrases such as "the guy who went into the store" and "the driver."

Washington argued to the jury that he could not have been guilty because he had an alibi for the time of the robbery. The evidence of this alibi was conflicting. The jury found Washington guilty, and the trial judge sentenced Washington to two consecutive life terms of incarceration for the murders and a concurrent term of ten to twenty years' incarceration for conspiracy.

## B.    Procedural History

The Superior Court of Pennsylvania affirmed Washington's conviction, and the Supreme Court of Pennsylvania denied Washington's appeal. In January 2005, Washington challenged his convictions under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §§ 9451-46, alleging ineffective assistance of counsel and a number of violations of his constitutional rights. The PCRA court denied his petition and the Superior Court affirmed, writing that there was no violation of Washington's Confrontation Clause rights under the blanket rule set out in *Commonwealth v. Travers*, 768 A.2d 845 (Pa. 2001). The Pennsylvania Supreme Court denied his appeal.

On June 14, 2010, Washington filed a federal habeas corpus petition in the Eastern District of Pennsylvania. A Magistrate Judge initially reviewed Washington's petition and recommended denying the petition on the merits. Before the District Court, Washington raised eleven objections to the

4

Magistrate Judge's Report and Recommendations. The District Court sustained one of these objections regarding Washington's rights under the Confrontation Clause, and granted a conditional writ of habeas corpus. The Commonwealth appealed from that decision.

This Court heard the appeal on May 15, 2013, and issued a precedential opinion on August 9, 2013. In that opinion, we highlighted *Bruton*'s holding that a "criminal defendant is deprived of his right to confrontation when a nontestifying codefendant's confession names him, regardless of whether the judge has given the jury a limiting instruction. Although juries are generally presumed able to follow instructions about the applicability of the evidence, the Court in *Bruton* determined that a nontestifying codefendants' [sic] confession that names the defendant poses too great a risk that the jury will use the evidence to determine the guilt or non-guilt of someone other than the confessor." *Washington v. Sec'y Pa. Dep't of Corr.*, 726 F.3d 471, 475 (3d Cir. 2013) *cert. granted, judgment vacated sub nom. Wetzel v. Washington*, 134 S. Ct. 1935 (2014) (citing *Bruton v. United States*, 391 U.S. 123, 126, 135 (1968)). We pointed out that the redacted statement of the nontestifying codefendant in *Richardson v. Marsh*, 481 U.S. 200 (1987), had eliminated any mention of the defendant's name or her existence and did "not violate the Confrontation Clause because jurors are more likely to be able to follow a limiting instruction when 'the confession was not incriminating on its face.'" *Washington*, 726 F.3d at 476 (quoting *Richardson*, 481 U.S. at 208). After discussing the redaction of Waddy's confession, we concluded that "no reasonable reading of *Bruton*, *Richardson*, and *Gray* can tolerate a redaction that the trial judge knew at the time of introduction would be transparent to the jurors. Taylor's testimony clearly and explicitly identified

5

Washington as the driver. Replacing Washington's name with 'the driver' was, as counsel stated, tantamount to using Washington's name." *Washington*, 726 F.3d at 480. We held that "the District Court properly granted Washington's habeas relief because (A) the Pennsylvania Superior Court unreasonably applied clearly established federal law when it concluded that the trial court had properly admitted into evidence redacted nontestifying coconspirator testimony and (B) that error substantially and injuriously affected Washington's case." *Id.* at 475. We then affirmed the District Court's order and instructed the Commonwealth to either release or retry Washington within 120 days. The Commonwealth was subsequently granted a writ of certiorari by the Supreme Court of the United States, which vacated this Court's judgment and remanded the case to this Court for further consideration in light of *White v. Woodall*. We requested supplemental briefing and reargument from the parties in light of the Supreme Court's decision.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254 and this Court has jurisdiction over the District Court's order granting the conditional writ of habeas corpus pursuant to 28 U.S.C. §§ 1291 and 2253(a). We conduct a plenary review of the District Court's legal conclusion that the state court decision was an unreasonable application of federal law as established by the holdings of the Supreme Court of the United States. *Lambert v. Blackwell*, 387 F.3d 210, 231 (3d Cir. 2004).

## III.

Washington seeks relief on the ground that his Sixth Amendment rights were violated by the state court's admission of a codefendant's improperly redacted confession

6

and argues that we are not precluded from granting relief under the Antiterrorism and Effective Death Penalty Act of 1996, because the state court's admission of this confession was an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The Commonwealth argues that, in light of *White*, we must now consider whether the state court's analysis of Washington's Confrontation Clause claim was a reasonable application of that precedent. Washington argues that he is entitled to relief, even post-*White*. As directed by the Supreme Court, we now reconsider Washington's claim for federal habeas relief in light of *White*.

## A.

In this case we must determine whether the Pennsylvania Superior Court unreasonably applied federal law as established by the holdings of the Supreme Court of the United States. "This standard . . . is difficult to meet." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013) (internal quotation marks omitted). "In this context, clearly established law signifies the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (internal quotation marks omitted). "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 134 S. Ct. at 1702 (internal quotation marks omitted). Instead, the "state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). However, "[a]pplying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule

7

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The pertinent federal law at issue is the Sixth Amendment right of a criminal defendant to "be confronted with the witnesses against him." U.S. Const. amend. VI. The contours of this right as relevant to Washington's petition were established in three Supreme Court cases: *Bruton v. United States*, 391 U.S. 123 (1968); *Richardson v. Marsh*, 481 U.S. 200 (1987); and *Gray v. Maryland*, 523 U.S. 185 (1998).

In *Bruton*, a postal inspector testified at trial that one codefendant, Evans, confessed to committing an armed robbery and had named his codefendant Bruton as his accomplice. The trial judge "instructed the jury that although Evans' confession was competent evidence against Evans it was inadmissible hearsay against petitioner and therefore had to be disregarded in determining petitioner's guilt or innocence." *Bruton*, 391 U.S. at 125. The *Bruton* Court held that a criminal defendant is deprived of his constitutional right to confrontation when a non-testifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, regardless of whether the judge has given the jury a limiting instruction to consider the confession only with regards to the confessor. 391 U.S. at 126. In short, the Court "recognized a narrow exception" to the presumption that a jury will follow the instructions of the trial court, *Richardson*, 481 U.S. at 207, noting that under these circumstances "the risk that a jury will not or cannot, follow the instructions is so great and the consequences of failure so vital to the defendant, that the practical and human

8

limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135.

Next, in *Richardson*, one non-testifying codefendant's confession to an assault and murder that was given to police was admitted at the codefendants' joint trial. The confession was redacted to omit all reference to Clarissa Marsh, one of the other codefendants being tried at that time. *Richardson*, 481 U.S. at 203. Further, the jury was given a limiting instruction to not use the confession in any way against the other codefendants, including Marsh. *Id.* at 205. Marsh objected to the confession's admission under *Bruton* as a violation of her right to confrontation. The *Richardson* Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. When a confession has been completely sanitized in this fashion, the *Richardson* Court explained, "a judge's instruction may well be successful" and "there does not exist the overwhelming probability" that a jury will be unable to disregard the incriminating statement. *Id.* at 208.

Most recently came *Gray*. There, a non-testifying codefendant's confession to beating a person to death was admitted after it was redacted by substituting a blank space or the word "deleted" for the defendants' names. *Gray*, 523 U.S. at 188. When the confession was read in court, the detective who read it into evidence said the words "deleted" or "deletion" whenever either of the codefendants' names appeared. *Id.* One of the codefendants challenged the admission of the confession into evidence, despite the judge giving a limiting instruction.

9

The *Gray* Court took the opportunity to delineate the boundaries of the exception to the constitutional right to confrontation. It wrote that in *Gray*, "unlike *Richardson*'s redacted confession, this confession refers directly to the 'existence' of the nonconfessing defendant." *Id.* at 192. It held that,

> redaction that replaces a defendant's name with an obvious indication of deletion . . . still falls within *Bruton*'s protective rule. . . . Redactions that simply replace a name with an obvious blank space . . . or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result.

*Id.* This is because "the obvious deletion may well call the jurors' attention specially to the removed name [and] . . . [is] directly accusatory." *Id*. at 193-94. Justice Scalia in dissent noted that "[t]oday the Court . . . extends *Bruton* to confessions that have been redacted to delete the defendant's name." *Id*. at 200.

Taken together, the current state of the law is that there is a Confrontation Clause violation when a non-testifying codefendant's confession is introduced that names another codefendant, *Bruton*, 391 U.S. at 126, or that refers directly to the existence of the codefendant in a manner that is directly accusatory, *Gray*, 523 U.S. at 193-94. That is because such statements present a "substantial risk that the jury, despite instructions to the contrary, [will] look[] to the incriminating extrajudicial statements in determining [the defendant's]

10

guilt." *Bruton*, 391 U.S. at 126. But there is no violation if the confession is properly redacted to omit any reference at all to the codefendant, making it more likely that the jury will be able to follow the court's instruction to disregard this evidence in rendering its verdict. *Richardson*, 481 U.S. at 208, 211. It is against this background that we assess whether the Pennsylvania Superior Court unreasonably applied clearly established federal law.

In many cases, the decisions of lower courts on *Bruton* issues are close calls that cannot be said to unreasonably apply clearly established federal law. They are subject to fairminded disagreement. This is not one of those cases. In our view, the confession that Detective Cummings read during his testimony was insufficiently redacted and the Pennsylvania Superior Court unreasonably applied clearly established federal law when it affirmed its admission into evidence. The Superior Court applied a blanket rule, derived from *Commonwealth v. Travers*, 768 A.2d 845 (Pa. 2001), that any redaction that would require a juror to consider an additional piece of information outside the confession in order to identify the coconspirator being referred to automatically falls inside the realm of *Richardson*. *See* App. at 72-73. This is not a reasonable view of the law and would permit the admission of many facially incriminating confessions, in direct contradiction of the rules clearly established in the *Bruton/Richardson/Gray* trilogy. For instance, *Gray* expressly instructs that the redaction cannot use descriptive terms, 523 U.S. at 195, cannot replace the defendant's name with any kind of symbol, *id*. at 192, and cannot replace the defendant's name with an obvious indication of deletion, *id*. at 192. The redacted confession in this case utilizes each of those proscribed methods. It replaces Washington's name with the phrase "the driver" in some

11

instances. *See, e.g.*, J.A. 268, 269, 270. "Driver" in this context is a noun used to describe the role that Washington played in the robbery; it is used to identify and describe a particular actor, much like a name or title. Furthermore, it is a kind of symbol—an obvious indication of deletion or alteration to replace a name that is mysteriously absent. The reference to "Jimmy" in the confession arouses suspicion or confusion when the other participants are called "the guy who went into the store with Jimmy" and "the driver," though Waddy stated that he knew "Jimmy" for "like a good couple of years" while he knew "the driver" for "a long time, like ten years." J.A. 268-70. This is such an obvious indication of alteration that it "function[s] the same way grammatically. [It is] directly accusatory," *Gray*, 523 U.S. at 194, and "leave[s a] statement[] that . . . so closely resemble[s] *Bruton*'s unredacted statements," *id.* at 192, that allowing its admission is an unreasonable application of clearly established federal law. This "obvious deletion may well call the jurors' attention specially to the removed name," *id.* at 193, the antipode of the intended result of the redaction.

Furthermore, *Gray* instructs that these rules apply to instances where more than one name is redacted, *id.* at 194-95, and the rules apply even to those redacted statements where there is not blatant linkage, *id.* at 193. It is not enough to say that because there were redactions of both Johnson and Washington's names that the rules from *Bruton* and *Gray* do not apply. The express language of the Supreme Court in *Gray* states that even though:

> [T]he reference might not be transparent in other cases in which a confession, like the present confession, uses two (or more blanks) . . . we believe that, considered as a class, redactions that . . . similarly notify the jury that

12

> a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results.

*Id.* at 194-95. This is just that case. Here, there were two obvious alterations that notified the jury that Washington's name was deleted. It therefore demands the same result as in *Bruton*. This is the case even though "the State does not blatantly link [Washington] to the deleted name." *Id.* at 193. The jury did not need to even hear Taylor's earlier testimony that Washington was the driver; it needed only to "lift [its] eyes to [Washington], sitting at counsel table, to find what will seem the obvious answer." *Id.* Waddy's detailed confession about the murders and the role that each of the four participants played, even though redacted, was so powerfully incriminating that it "posed an obvious and serious risk that the jury would, contrary to the instruction it received, weigh Waddy's confession in its determination of Washington's guilt or non-guilt." *Washington*, 726 F.3d at 481. As we concluded before, "no reasonable reading of *Bruton*, *Richardson*, and *Gray* can tolerate a redaction that the trial judge knew at the time of introduction would be transparent to the jurors." *Id.* at 480. For all of these reasons, the admission of Waddy's insufficiently redacted confession is in violation of the clear Confrontation Clause precepts laid out in *Bruton*, *Richardson*, and *Gray* and demands that we overturn the Pennsylvania court's ruling. This was an unreasonable application of clearly established federal law as set out by the Supreme Court.

## B.

Orders from the Supreme Court that summarily grant certiorari, vacate the decision below without finding error,

13

and remand the case for further consideration by the lower court ("GVRs") are not decisions on the merits. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001). Rather,

> [w]here intervening developments, or recent developments that [the Supreme Court has] reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, a GVR order is, we believe, potentially appropriate.

*Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam). It is precisely this type of GVR with which we must grapple today to determine whether the Supreme Court's disposition in *White* ought to change our disposition of Washington's appeal.

In *White v. Woodall*, 134 S. Ct. 1697 (2014), the defendant "brutally raped, slashed with a box cutter, and drowned a 16-year-old high-school student. After pleading guilty to murder, rape, and kidnaping, he was sentenced to death." *Id.* at 1700-01. At the penalty phase of the trial in state court, the defendant called character witnesses to testify on his behalf but did not himself testify. The defense counsel asked for the judge to instruct the jury that the defendant was not compelled to testify and the fact that he failed to do so should not prejudice him in any way. *Id.* at 1701. The trial judge denied this request; that decision was affirmed on appeal. After exhausting his direct appeals, the defendant

petitioned for the writ of habeas corpus in federal court. The District Court granted relief, holding that "the trial court's refusal to issue a no-adverse-inference instruction at the penalty phase violated respondent's Fifth Amendment privilege against self-incrimination." *Id.* It wrote that "[a]n unreasonable application can also occur where 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Woodall v. Simpson*, No. 5:06CV-P216-R, 2009 WL 464939, at *4 (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)) (alteration in original). The Fifth Circuit affirmed, and the Supreme Court granted certiorari.

In its opinion, the Supreme Court grappled with the contours of this aspect of Fifth Amendment law vis-à-vis § 2254's "unreasonable application" language. The relevant Supreme Court precedents were *Carter v. Kentucky*, 450 U.S. 288 (1981), *Estelle v. Smith*, 451 U.S. 454 (1981), and *Mitchell v. United States*, 526 U.S. 314 (1999). In *Carter*, the Supreme Court held that a judge is required to give a no-adverse-inference instruction at the guilt phase of the trial. 450 U.S. at 294-95, 300. *Estelle* was a case about the prosecution's use of a defendant's court-ordered psychiatric testimony to establish his future dangerousness at the sentencing phase of trial. 451 U.S. at 456. *Mitchell*, finally, "disapproved a trial judge's drawing of an adverse inference from the defendant's silence at sentencing with regard to factual determinations respecting the circumstances and details of the crime." *White*, 134 S. Ct. at 1702 (internal quotation marks omitted). In *White*, the District Court analogized to these cases and held that by not extending these precedents to give the no-adverse-inference instruction at the

15

penalty stage of a trial, the state court had unreasonably refused to extend clearly established federal law.

> The Supreme Court responded by holding that it

> has never adopted the unreasonable-refusal-to-extend rule on which respondent relies. It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief. To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in *Williams* and reiterated many times since, we reject it. . . . [Section 2254(d)(1)] does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.

*Id.* at 1706. As a result, it reversed the Court of Appeals and remanded the case. It was careful, however, to note that a finding of unreasonable application did not require identical fact patterns. "To the contrary, state courts must reasonably apply the rules 'squarely established' by this Court's holdings to the facts of each case." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "'[T]he difference between applying a rule and extending it is not always clear,' but '[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.'" *Id.* (quoting *Yarborough*, 541 U.S. at 666) (alterations in original).

Our opinion merely utilizes the "unreasonable application" concept; we do not apply the "unreasonable-refusal-to-extend" concept. We have repeatedly explained that § 2254 limits habeas relief to cases where the state court's conclusion was an unreasonable application of that

law. We hold only that the Pennsylvania Superior Court unreasonably applied the Supreme Court's holdings to the facts of Washington's case.

Though the Supreme Court has not provided significant guidance on what constitutes an extension of law versus an application, the Eleventh Circuit has discussed this distinction in *Hawkins v. Alabama*, 318 F.3d 1302 (11th Cir. 2003). In *Hawkins*, a defendant was tried in state court for trafficking in marijuana and failure to pay a drug tax. At trial, the prosecutor engaged in misconduct in handling some evidence. The defendant moved for a new trial, which was granted, and then moved to dismiss the indictment on double jeopardy grounds, which was denied. The defendant was subsequently convicted.

Hawkins pursued a petition for post-conviction relief in federal court. The district court concluded that the state court unreasonably applied clearly established federal law because it unreasonably refused to extend the rule from *Oregon v. Kennedy*, 456 U.S. 667 (1982), which held that intent of the prosecutor is the standard in determining whether the Double Jeopardy Clause bars retrial. *Id.* at 675-76. The Eleventh Circuit held that the *Kennedy* rule applied only to plain, unconcealed prosecutorial misconduct, writing that "[t]he prosecutor's misconduct in [*Hawkins*] is materially different from that described in *Kennedy* and is not—to say the least—clearly covered by the *Kennedy* rule." *Hawkins*, 318 F.3d at 1308.

This is one of the few examples of an unreasonable refusal to extend Supreme Court precedent. It teaches us that we are permitted by § 2254(d)(1) to apply the rationales of Supreme Court decisions to new and different facts and circumstances as long as "the new facts and circumstances . .

17

. [are] substantially the same that were in the mind of the Supreme Court when it laid down the rule. . . . [However, t]o widen the scope of or to enlarge Supreme Court rules" is impermissible. Brian R. Means, *Postconviction Remedies* § 29:40 (2014).

In many cases, "it will be hard to distinguish a decision involving an unreasonable extension of a legal principle from a decision involving an unreasonable application of law to facts." *Williams*, 529 U.S. at 408. Therefore, our touchstone is whether or not the legal principles from the Supreme Court cases at issue here are fundamental. *See Yarborough*, 541 U.S. at 666.

Recall that in *White* the state court refused to give a no-adverse-inference instruction at the penalty phase, when the applicable Supreme Court precedent only required a no-adverse-inference instruction at the guilt phase. The lower courts labeled this an unreasonable refusal to extend Supreme Court precedent, not an unreasonable application of this precedent. When contrasted with *White*, it becomes clear why the case here is properly categorized as an unreasonable-application case, not an unreasonable-refusal-to-extend case. Instead of finding that the state court has not appropriately extended *Bruton*, *Richardson*, and *Gray* to a unique new legal situation, we instead admonish it for refusing to apply these well-established precedents to a slightly different factual situation—a redacted confession using generic terms and terms describing the defendant's role in the crime that a jury, despite instruction, is unlikely to forget in deciding Washington's culpability. The circumstances here constitute merely a factual permutation requiring the application of well-settled, fundamental legal principles, and therefore our holding is based on the Superior Court's unreasonable application of well-established federal law as defined by the

18

Supreme Court, not on an unreasonable refusal to extend this law. *White*, 134 S. Ct. at 1706 (cautioning that § 2254(d)(1) does not require an "identical factual pattern before a legal rule must be applied" and reiterating that "[c]ertain principles are fundamental enough that when new factual permutations arise the necessity to apply the earlier rule will be beyond doubt") (alteration in original) (internal quotation marks omitted)).

The District Court's analysis of the *Bruton* rule with regards to Waddy's confession has therefore not been shown to be in error under *White* and the dictates of § 2254.

### C.

Having concluded that the Pennsylvania Superior Court unreasonably applied federal law as established by the holdings of the Supreme Court, we turn to assess whether the *Bruton* error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (internal quotation marks omitted). This means that there "must be more than a reasonable probability that the error was harmful . . . [and] the court must find that the defendant was actually prejudiced by the error." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (internal quotation marks omitted).

"If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) (quoting *Kotteakos v. United States,* 328 U.S. 750, 764 (1946)) (alteration in original). "But if we have 'grave doubt' about whether the error had substantial and injurious effect or influence in determining the jury's verdict, we must conclude that the error was not harmless." *Adamson v. Cathel*, 633 F.3d

248, 260 (3d Cir. 2011). The Supreme Court has cautioned that "the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict." *O'Neal*, 513 U.S. at 435. We must conduct our own harmless error analysis. *Bond v. Beard*, 539 F.3d 256, 275-76 (3d Cir. 2008).

When conducting that review, it is important to note that there was conflicting evidence pertaining to Washington's alibi presented at trial. Washington contended that he had been visiting his father at the hospital at the time of the robbery. There was some doubt from the paramedics who transported his father to the hospital, neighbors, and other family members who had visited the hospital as to the veracity of this contention. Further, at trial the only significant evidence against Washington came from Taylor's testimony. This testimony suffers from significant credibility problems, because of Taylor's history of drug and alcohol abuse, as well as Taylor's inherent incentive to minimize his own culpability as a participant in the events he described.

The Commonwealth argues that the redaction error cannot have caused a "substantial and injurious effect" for three reasons. First, it says that the Commonwealth had a relatively light evidentiary burden to carry. This, however, dramatically understates the corroborative effect of Waddy's confession on Taylor's less-than-credible statement. Second, it says that Taylor's testimony standing alone is sufficient evidence against Washington, so Waddy's statement could not be consequential. This argument is unpersuasive, as it appears likely that Waddy's confession, when viewed in tandem with Taylor's statement, "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (internal quotation marks omitted). Finally, the Commonwealth argues that Washington presented a weak rebuttal of character evidence and a

20

hopelessly contradictory alibi. This, too, is insufficient, for the Commonwealth had the burden of proving Washington's guilt, and the introduction of the improperly redacted confession undercut Washington's effort to raise doubts about the credibility of Taylor's testimony. Moreover, Waddy's confession made Washington more culpable. Taylor identified Washington as the driver. Waddy said he was the driver, and that after hearing the shots, he entered the building (presumably skirting the victims, one of whom was clinging to life) and recovered the safe. This is testimony that a jury would have difficulty forgetting in deciding Washington's culpability.

This is a similar situation to that in *Vazquez v. Wilson*, 550 F.3d 270 (3d Cir. 2008), where this Court found that a *Bruton* violation caused a "substantial and injurious effect" even when there was ballistic evidence, fingerprint evidence, and other evidence at trial incriminating the defendant aside from the improperly *Bruton*-ized statement. *Id.* at 282-83. Given that precedent, where there was far more inculpatory evidence and a similarly improper statement, we find that Washington has overcome his burden under *Brecht* and has sown in our minds "grave doubt about whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Adamson*, 633 F.3d at 260 (internal quotation marks omitted). Therefore, we must conclude that the error was not harmless.

## IV.

For the foregoing reasons, we will affirm the June 7, 2012, order of the District Court. Consistent with that order,

21

the Commonwealth of Pennsylvania shall either release or retry Washington within 120 days of entry of this order.[1]

---

[1] The Duquesne Law School Federal Practice Clinic ably represented Washington in this appeal. We thank the students and the law school for their service.