**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3260
_____

SHAWN OMAR JACOBS,
Appellant

v.

SUPERINTENDENT MAHANOY SCI; THE DISTRICT ATTORNEY OF
MONTGOMERY COUNTY; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-17-cv-00569)
U.S. District Judge:  Honorable Edward G. Smith
_____

Argued March 6, 2023
_____

Before:  SHWARTZ, BIBAS, and AMBRO, Circuit Judges.

(Filed:  March 15, 2023)
_____

OPINION*
_____

Victor J. Abreu, Jr.
Samuel R. Welch [ARGUED]

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Federal Community Defender Officer for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 545 West
Philadelphia, PA 19106

      Counsel for Appellant Shawn Omar Jacobs

Robert M. Falin [ARGUED]
Adrienne D. Jappe
Montgomery County Office of District Attorney
P.O. Box 311
Norristown, PA 19404

      Counsel for Appellees Superintendent Mahanoy SCI, District Attorney
      Montgomery County and Attorney General Pennsylvania

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

      Counsel for Appellee Attorney General Pennsylvania

SHWARTZ, <u>Circuit Judge</u>.

Shawn Jacobs appeals the order denying his habeas petition under 28 U.S.C. § 2254. For the reasons that follow, we will affirm the District Court's order.

I

A

Jacobs and a codefendant, Stanley Howard, were convicted of killing Jamal Terry in December 2008. The day Terry was murdered, Officer Brian Saxon of the Norristown, Pennsylvania Police Department noticed a white Chevrolet Lumina parked illegally in front of a store called the Golden Dragon. As Officer Saxon was placing tickets on the

vehicle, a man—whom Officer Saxon later identified as Jacobs—approached him to discuss the tickets.

Later that night, Terry and a friend, Andrew Willis, entered the Golden Dragon. While inside, Willis observed two men standing by the door. Willis and Terry left and were thereafter approached by the same two men. One of them was armed. The armed assailant forced Willis to the ground, told him to empty his pockets, and struck him on the head with the gun multiple times. His companion, meanwhile, robbed Terry. According to Willis, at some point the armed assailant left Willis, handed his companion the gun, and returned to Willis. Willis then heard a single gunshot and the two assailants fled. Terry died shortly thereafter from a gunshot wound to the neck.

Three days after the shooting, Officer Saxon saw the same Lumina he had ticketed parked on a Norristown street. As he and another officer approached the car, the person in the passenger seat—later identified as Jacobs—fled. Howard, who was sitting in the driver's seat, was arrested. The officers recovered a handgun on the ground outside the passenger door. A ballistics expert determined that the bullet that killed Terry was fired from the gun and DNA from Jacobs, Howard, and others was present on the firearm.

Howard told the police that he committed the robbery with Jacobs, and that Jacobs shot Terry. He also told the police that he paid to have two teardrops tattooed on his face immediately after the murder, one of which was intended to commemorate the shooting. After the shooting, Jacobs also got two teardrops tattooed on his face but he had them

3

altered after Howard was arrested.  Jacobs and Howard were charged with first degree murder, and Jacobs turned himself in.

B

Jacobs and Howard were tried jointly, and Willis testified at their trial.  On direct examination, Willis explained that, after the police arrived at the scene of the crime, he was "hysterical" but able to "pretty much tell [the police] what the guys looked like." App. 585-86.  He testified that, a few days after Terry's murder, he looked at two photo arrays and identified Howard as the assailant who hit him in the head with the gun.  He also identified Jacobs as the shooter but had some "reservations" about the identification because "[t]he lighting on the photo made . . . his skin tone [appear] a little off . . . ." App. 591.  Several months after the incident, Willis identified Jacobs as the shooter during an in-person lineup.  At trial, Willis testified that he was "[o]ne hundred percent sure" that Jacobs and Howard were the assailants, App. 585, and that Jacobs was the shooter.

On cross-examination, Willis testified that on the night of the incident he described the shooter as (1) measuring between five-foot-eleven and six-foot-one in height, (2) weighing between 150 and 160 pounds, (3) having a medium complexion with a little beard, and (4) appearing to be eighteen to twenty-one years old.  Willis explained, however, that days after the incident, he contacted the police to explain that he might have "confus[ed]" the assailants' heights in his initial description and the shooter might have been shorter than he initially described.  App. 1064.  Willis also testified on cross

4

that he had seen Jacobs' photo "[m]omentarily" on television before identifying him during the in-person lineup. App. 619.

The prosecution also presented Howard's post-arrest statements to the police. Because Howard did not testify, and Jacobs therefore could not cross-examine him, the references to Jacobs in Howard's statements were replaced with the words "the person" in an effort to comply with Bruton v. United States, 391 U.S. 123 (1968). Jacobs' counsel did not object to the redactions nor did he object when the statements were offered into evidence. The jury was instructed that it could not consider the statements as evidence against Jacobs.

At closing, the prosecutor twice "broke" the redactions and referred to Jacobs' name when discussing Howard's statements. First, the prosecutor stated that Howard "sa[id] he [was] in control of Mr. Willis [and] Defendant Jacobs ha[d] control of Mr. Terry." App. 845. Jacobs' counsel did not object to this statement. Second, the prosecutor stated "Mr. Howard said in his statement that Mr. Jacobs had handled th[e] gun . . . ." App. 855. Jacobs' counsel objected to this statement and the prosecutor immediately corrected himself, stating "[p]ardon me[—t]hat the other person had handled th[e] gun." App. 855. The court did not rule on the objection.

In his closing argument, Jacobs' counsel attacked the reliability of Willis' identification. He argued that the description Willis provided immediately after the shooting did not accurately describe Jacobs' height, skin tone, or facial hair. He also suggested that, on the day Terry was murdered, Officer Saxon encountered a different man outside the Golden Dragon who looked similar to the person described as the

5

shooter. Jacobs' counsel did not seek, and the court did not give, an instruction under Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954), which would have directed the jury to receive Willis' identification testimony with caution.

Jacobs was found guilty of first-degree murder, among other crimes, and was sentenced to life imprisonment without parole.

C

Jacobs appealed to the Superior Court of Pennsylvania, which affirmed his conviction, and both the Pennsylvania Supreme Court, Commonwealth v. Jacobs, 21 A.3d 1191 (Pa. 2011), and the United States Supreme Court, Jacobs v. Pennsylvania, 565 U.S. 1216 (2012), declined review. Jacobs then filed a petition under the Pennsylvania Post-Conviction Relief Act ("PCRA"), **App. 1016-52,** which the PCRA Court denied, and the Superior Court affirmed.

Jacobs next filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which a Magistrate Judge recommended that the District Court deny. With one non-dispositive exception, the District Court adopted the Magistrate Judge's report and denied Jacobs' petition. See Jacobs v. DelBalso, No. 17-cv-00569, 2020 WL 5705689, at *15 (E.D. Pa. Sept. 24, 2020).

We granted a certificate of appealability as to Jacobs' claims that (1) his trial counsel was ineffective for failing to object to: (a) the admission of Howard's redacted statements, and (b) the first instance in which the prosecutor mentioned Jacobs' name in his closing statement; (2) his Confrontation Clause rights were violated the second time the prosecutor mentioned Jacobs' name in his closing statement; (3) his trial counsel was

6

ineffective for failing to request a <u>Kloiber</u> instruction; and (4) he suffered cumulative prejudice from these errors.

II[1]

A

Even assuming that Jacobs' counsel should have objected to the admission of Howard's redacted statements and the prosecutor's first mention of Jacobs' name during his summation, and even assuming there was a <u>Bruton</u> error the second time the prosecutor mentioned Jacobs' name during his summation, these errors did not prejudice Jacobs and hence were harmless.

Under the prejudice prong of <u>Strickland v. Washington</u>, a petitioner alleging ineffective assistance must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695.

Similarly, a habeas petitioner asserting a <u>Bruton</u> violation is only entitled to relief if the state court's error was not harmless. <u>Eley v. Erickson</u>, 712 F.3d 837, 847 (3d Cir. 2013). An error is harmless unless it caused "actual prejudice," or, in other words, it had

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review Jacobs' claims under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). <u>See</u> 28 U.S.C. § 2254.

7

a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted). The harmless-error test is coextensive with Strickland's prejudice prong. See Preston v. Superintendent Graterford SCI, 902 F.3d 365, 382 (3d Cir. 2018) ("The prejudice prong of the Strickland analysis is consistent with the general 'harmless error' standard applicable to all federal habeas petitioners alleging non-structural errors." (citation omitted)); Breakiron v. Horn, 642 F.3d 126, 147 n.18 (3d Cir. 2011).[2] Therefore, if Jacobs cannot show prejudice under Strickland on his two ineffective-assistance claims, he also cannot show that he was "actually prejudiced" by the Bruton violation in the prosecutor's closing statement.

Jacobs cannot make the required showing under Strickland or Brecht. The testimony established that (1) he was at the scene of the crime hours before Terry was murdered, (2) Jacobs fled from the police when they approached him and Howard days after the murder, (3) the police found the murder weapon on the ground outside the passenger side of the car from which Jacobs fled, (4) his DNA was on the murder weapon, (5) he and Howard got two teardrop tattoos hours after the murder, and (6) Jacobs got the tattoos altered after Howard was arrested. In addition, Willis, an eyewitness to the murder, testified he was "[o]ne hundred percent" certain that Jacobs was the shooter. App. 585, 592; See Bond v. Beard, 539 F.3d 256, 275-76 (3d Cir. 2008) (concluding that a Bruton error did not prejudice the defendant where, among other evidence, an eyewitness testified that they were "absolutely certain" the defendant was

---

[2] See also Byrd v. Workman, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011); Smith v. Dixon, 14 F.3d 956, 974, 976 (4th Cir. 1994) (en banc).

the shooter). This evidence places Jacobs at the scene, indicates he handled the murder weapon, identifies him as the shooter, and shows consciousness of guilt. Thus, Howard's statement about Jacobs was largely cumulative of the other evidence and its admission did not prejudice Jacobs.

Jacobs argues Howard's statements were prejudicial because they "bolstered and reinforced the testimony of the Commonwealth's only other eyewitness, Willis, whose account was highly unreliable on its own." Petitioner's Br. at 35. Jacobs is incorrect that Willis' testimony was highly unreliable. While Willis expressed reservation when he initially identified Jacobs in the photo array only because of the tone of the photo, he specifically stated that the photo of Jacobs depicted the facial features of the shooter. Moreover, Willis sought to clear up any discrepancies in his statement to the police regarding the assailants' heights and offered a reasonable explanation for any confusion on this point—that, as a relatively tall man, Willis has a hard time describing the heights of people who are shorter than him, and he was on the ground during most of the interaction. Finally, at trial, Willis did not equivocate in his identification of Jacobs as the shooter.

Furthermore, Willis' testimony was corroborated by evidence other than Howard's statements. Willis testified that Jacobs was in the Golden Dragon prior to the attack and Officer Saxon's testimony placed Jacobs in the vicinity of the Golden Dragon hours before the incident. Willis testified that Howard handed the gun to Jacobs and both actors' DNA was on the firearm. Willis testified Terry was killed by a gunshot and forensic and ballistic evidence established that Terry was killed by a bullet fired from the

9

gun that was found near the side of the car from which Jacobs fled. Thus, Willis'

testimony is reliable on its own and is consistent with the other evidence.[3]

For these reasons, Jacobs' ineffective assistance of counsel and <u>Bruton</u> claims fail.

B

We next evaluate Jacobs' claim that his counsel was ineffective for failing to

request a <u>Kloiber</u> instruction directing the jury to receive Willis' identification testimony

with caution.[4] The state courts did not adjudicate this claim, so our review is plenary.

---

[3] This case is not like the ones in which we have previously found <u>Bruton</u> violations prejudicial. <u>See, e.g.</u>, <u>Johnson v. Superintendent Fayette SCI</u>, 949 F.3d 791, 802-03 (3d Cir. 2020) (concluding prejudice existed because eyewitness testimony was generally inconsistent with the other witnesses, and "[t]he prosecution presented no physical evidence that directly implicated [the defendant] in the shooting"); <u>Washington v. Sec'y Pa. Dep't of Corr.</u>, 801 F.3d 160, 162 (3d Cir. 2015) (determining prejudice existed where the eyewitness, who was a participant in the crime, had "significant inconsistencies" including the eyewitness's "history of substance abuse and admitted heavy impairment from drugs at the time of the incident in question"); <u>Eley</u>, 712 F.3d at 861 (holding a <u>Bruton</u> error prejudicial where "the [Commonwealth] ma[de] no argument to the contrary" and the codefendant's confession "added substantial, perhaps even critical, weight to the Commonwealth's case" (quotations omitted)); <u>Vazquez v. Wilson</u>, 550 F.3d 270, 283 (3d Cir. 2008) (concluding the <u>Bruton</u> errors were prejudicial because the only direct evidence implicating the defendant as the shooter was the improperly admitted codefendant's statement and "no witness at the trial [testified seeing the defendant] fire a weapon").

Unlike all of these cases, here, even without Howard's statement, there is both reliable eyewitness and forensic evidence implicating Jacobs as the shooter. Thus, the case is more like <u>Bond</u> in which an eyewitness testified at trial that he was absolutely certain the defendant was the perpetrator and, based on this testimony among other evidence, we concluded that the <u>Bruton</u> error was harmless. 539 F.3d at 276.

[4] Because Jacobs failed to raise this issue on PCRA review, it is procedurally defaulted. <u>Bey v. Superintendent Greene SCI</u>, 856 F.3d 230, 236-37 (3d Cir. 2017). We need not, however, determine whether Jacobs showed cause and prejudice to excuse the default because we conclude his ineffectiveness claim lacks sufficient merit. <u>See Roman v. DiGuglielmo</u>, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny Roman's claims on the merits, we need not address the issue of exhaustion in this case.").

10

Baxter v. Superintendent Coal Twp. SCI, 998 F.3d 542, 546 (3d Cir. 2021).  Because an instruction was unwarranted, counsel was not ineffective for failing to request it.

In Kloiber, the Pennsylvania Supreme Court held that "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify [the] defendant on one or more prior occasions," the trial court "should warn the jury that the testimony as to identity must be received with caution."  106 A.2d at 826-27.

Jacobs has not shown a Kloiber instruction was necessary here.  The trial testimony established that Willis had the opportunity to observe his assailants while in the Golden Dragon when they approached him and Terry on the street and during the robbery.  See Commonwealth v. Reid, 99 A.3d 470, 488-89 (Pa. 2014) (holding a Kloiber charge was unnecessary partly because the defendant did not demonstrate that the identification witnesses "did not have an opportunity to clearly view [him]" at the time of the murder).  Willis also provided a description of the attackers after the incident, positively identified both Jacobs and Howard before and at trial, and, even after cross-examination, stated that he was "[o]ne hundred percent" certain that Jacobs was the shooter, App. 585, 592.  Thus, the evidence shows that Willis was able to identify the attackers.  Reid, 99 A.3d at 490-91 ("Our case law makes clear that the need for a Kloiber instruction focuses on the ability of a witness to identify the defendant.").

Furthermore, contrary to Jacobs' argument, Willis' failure to identify Jacobs in a photo array days after the incident without reservation does not indicate that a Kloiber instruction was warranted.  Willis, in fact, did pick Jacobs out of the photo array but

11

expressed reservation only because "[t]he lighting on the photo [the police showed him] made . . . his skin tone [appear] a little off . . . ." App. 591. The Pennsylvania Supreme Court has held that the witness's failure to unequivocally identify the defendant prior to trial does not warrant a <u>Kloiber</u> instruction where the witness later positively identifies the defendant without equivocation. <u>See, e.g.</u>, <u>Commonwealth v. Gibson</u>, 688 A.2d 1152, 1163 (Pa. 1997) (holding a <u>Kloiber</u> instruction was unnecessary where the witness testified one of the photographs in a photographic array was "familiar" but chose to wait to make an in-person identification and immediately made a positive identification of the defendant at trial). Given Willis' positive identification of Jacobs both before and at trial, a <u>Kloiber</u> instruction was unnecessary.

Because counsel cannot be ineffective for failing to raise an unpersuasive argument, <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999), Jacobs' <u>Kloiber</u> claim fails.

III

For the foregoing reasons, we will affirm.[5]

_____

[5] Even assuming that competent counsel would have objected to the admission of Howard's redacted statements and the prosecutor's first mention of Jacobs' name during his summation, and even assuming there was a <u>Bruton</u> error the second time the prosecutor mentioned Jacobs' name during his summation, these errors all had the same effect: they revealed that Howard identified Jacobs as the shooter. Given the single effect, and in light of the other evidence establishing Jacobs' guilt, Jacobs cannot demonstrate the alleged errors had a "substantial and injurious" effect on the jury. <u>Brecht</u>, 507 U.S. at 637.